**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kristina M. Kelley,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Jewish Voice Ministries International,<br><br>　　　　　Defendant. | No. CV-23-00353-PHX-SPL<br><br>**ORDER** |

Before the Court are Jewish Voice Ministries International's ("Defendant's" or "JVMI's") Motion for Summary Judgment (Doc. 44) and accompanying Statement of Facts (Doc. 45), Kristina M. Kelley's ("Plaintiff's") Response (Doc. 49) and Statement of Facts (Doc. 55), and Defendant's Reply (Doc. 59). The Court now rules as follows.[1]

## I.     BACKGROUND

Plaintiff was hired by Defendant JVMI as an Associate Producer in the television production/broadcasting department in December 2017 and was later promoted to a Supervising Producer. (Doc. 45 ¶¶ 1–2, 4). Her responsibilities included coordinating guest commitments and booking for taping schedules, overseeing TV taping days, and making recommendations for program testing and improvements, among other duties. (*Id.* ¶ 6).

On October 19, 2020, Plaintiff suffered a stroke, and on October 29, she requested

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

a leave of absence from work under the Family and Medical Leave Act ("FMLA"). (*Id.* ¶¶ 9–15). Her leave was approved on November 17, 2020 and made retroactive to October 19, the date of her stroke. (*Id.* ¶ 12). During Plaintiff's twelve weeks of covered leave, she continued to communicate with coworkers to assist with an upcoming taping for a television program and hand off her duties to others during her leave, but the parties dispute the extent to which the Plaintiff's assistance was voluntarily undertaken or undertaken due to pressures from JVMI. (Doc. 55 ¶¶ 14–17). Plaintiff contends that "[a]t the same time JVMI told Plaintiff she did not need to work, she was bombarded with work-related inquiries and requests from JVMI's employees and vendors." (*Id.* ¶ 33).

In January 2021, Plaintiff returned to work on a remote, part-time basis under her disability insurance provider's "Work Incentive Program," which would allow her to gradually increase her work hours until she reached full-time status. (*Id.* ¶ 33; Doc. 1-3 ¶¶ 12–14). However, on February 15, 2021, Plaintiff and Defendant had a scheduled conference call where Plaintiff was informed that JVMI had revised Plaintiff's job description, so instead of having Plaintiff as a Producer, JVMI would hire a "Studio Manager/Technical Director" who could perform additional technical editing duties. (Doc. 1-3 ¶ 16; Doc. 55 ¶¶ 60–62). Plaintiff was informed that she would be designated as an "inactive" employee, and that "[w]hen [she was] released back to full-time work status" she "may" be considered "for either the newly defined job . . . or any other open positions . . . that [she was] qualified for." (Doc. 45-1 at 127). Plaintiff alleges that she was "shocked" and "devastated when she heard JVMI's decision," which resulted in depression that affected her physical health. (Doc. 49 at 3). On June 22, 2021, more than three months after Plaintiff had been designated an "inactive" status employee, Plaintiff was formally terminated by Defendant JVMI. (Doc. 55 ¶ 72; Doc. 55-1 at 134).

## II.   LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A

party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. The moving party can satisfy its burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See id*. at 322–23. When considering a motion for summary judgment, a court must view the factual record and draw all reasonable inferences in a light most favorably to the nonmoving party. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).

### III.    DISCUSSION

The FMLA was enacted in 1993, in part, to "entitle employees to take reasonable leave for medical reasons . . . ." 29 U.S.C. § 2601(b)(2). Under the FMLA, a covered employee has two interrelated rights: the right to use up to twelve weeks of leave per year for protected reasons, 29 U.S.C. § 2612(a)(1), and the right to return to the same job or an equivalent job after using protected leave, 29 U.S.C. § 2614(a). *Coleman v. Court of Appeals of Maryland*, 566 U.S. 30, 34 (2012); *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001). The FMLA and its implementing regulations[2] set out three categories of claims to protect these rights: (1) interference or entitlement claims under 29 U.S.C. § 2615(a)(1), asserting that an employer has denied, interfered with or restrained the exercise or the attempt to exercise any right protected by the FMLA; (2) discrimination or retaliation claims under 29 U.S.C. § 2615(a)(2), asserting that an employer has taken adverse action against an employee for opposing a practice made unlawful under the FMLA; and (3) discrimination or retaliation claims under 29 U.S.C. § 2615(b), asserting that an employer has taken adverse action against an employee for instituting or participating in FMLA proceedings or inquiries. 29 U.S.C. § 2617(a); 29 C.F.R. § 825.220; *see also Sanders v. City of Newport*, 657 F.3d 772, 777 (9th Cir. 2011).

///

---

[2]    Pursuant to 29 U.S.C. § 2654, the Department of Labor has promulgated regulations implementing the FMLA. *See* 29 C.F.R. § 825.100 *et seq*.

### A. Plaintiff's Claim for FMLA Retaliation

In the instant case, the Plaintiff's first cause of action falls into the "retaliation" category under 29 U.S.C. § 2615(a)(2), as Plaintiff contends that "Defendant terminated [Plaintiff]'s employment in retaliation for her complaints to Defendant that converting [Plaintiff]'s job into a different position for which she would not be considered was unfair and unlawful." (Doc. 1-3 ¶ 41). Defendant seeks summary judgment on this claim, arguing that it fails because (1) "[Plaintiff] was physically unable to return to full-time work following her leave of absence," and (2) "she cannot offer any evidence of retaliatory animus." (Doc. 44 at 1). In response, Plaintiff argues that (1) Defendant "is estopped from arguing that [Plaintiff] could not return to full-time work," and (2) that "JVMI admitted it would not have restructured the Supervising Producer's description *but-for* [Plaintiff]'s FMLA leave." (Doc. 49 at 13 (emphasis in original)).

#### 1. Legal Standard

The FMLA's anti-retaliation provision prevents an employer from discriminating in any way against an employee who opposes practices that the FMLA makes unlawful. *See* 28 U.S.C. § 2615(a)(2). Many courts within the Ninth Circuit have applied the *McDonnell Douglas* burden-shifting framework to FMLA retaliation claims, which requires a plaintiff to establish a prima facie case of FMLA retaliation by showing that "(1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action." *Isom v. JDA Software Inc.*, 2015 WL 3953852, at *11 (D. Ariz. June 29, 2015). *But see Fleming v. IASIS Healthcare Corp.*, 151 F. Supp. 3d 1043, 1055 (D. Ariz. 2015) (declining to apply the burden-shifting framework). If Plaintiff makes such a showing, the burden shifts to Defendant to articulate a "legitimate, nondiscriminatory reason for the adverse employment action." *Isom*, 2015 WL 3953852, at *11 (citation omitted). "If the employer articulates a legitimate reason for its action, the plaintiff must then show that the reason given is pretextual." *Id.* (citation omitted).

///

*2. Analysis*

Defendant does not argue that Plaintiff did not engage in a protected activity, or that Plaintiff did not suffer an adverse employment action. Rather, Defendant disputes the *reason* for the adverse employment action, arguing that Plaintiff was not reinstated as a supervising producer because "she was never medically cleared to resume full-time work." (Doc. 44 at 9). Defendant states that Plaintiff's medical records support such a conclusion because Plaintiff's doctor limited her "to a gradual return of only 10-15 hours per week" due to ongoing health issues. (*Id.* at 10).

If it were an undisputed fact that Plaintiff was unable to perform the essential functions of her former job after her FMLA leave, she would not be entitled to reinstatement. *See Sanders v. City of Newport*, 657 F.3d 772, 780 (9th Cir. 2011). Plaintiff, however, disputes this factual contention, arguing that her doctor's work release was based on the agreement she had made with JVMI to return to part-time work, and that the release therefore "merely reflected her agreement with JVMI" rather than the doctor's independent determination of her work capabilities at that time. (Doc. 55 ¶ 57). Defendant presents no evidence, besides Plaintiff's work release form and current disability status, to prove that she would have been unable to perform the essential functions of her job had she been asked to return immediately to full-time status—and to the contrary, Plaintiff contends that she "made it abundantly clear that if anything would jeopardize her position at [JVMI]— such as requiring her to return to full-time work—she would have done anything within her means to keep her position." (*Id.* ¶ 54).

However, Defendant further argues that even if Plaintiff had been cleared to return to full-time work, it had other legitimate, non-pretextual business reasons to revise the job description for its Supervising Producer, "including a financial need to reduce the amount of money that JVMI was spending on outside vendors to handle the technical/editing aspects of JVMI's production and broadcasts." (Doc. 44 at 10; Doc. 45-1 at 54–55, 58–59). Plaintiff counters that JVMI revised the Supervising Producer job description to include more "technical know-how" only after and because Plaintiff took her FMLA leave. (Doc.

5

55 ¶ 60). Plaintiff points to the fact that her performance evaluation, which she received only a few months before her FMLA leave, did not indicate that she lacked any necessary skills, technical or otherwise, to do her job. (Doc. 55-1 at 115–16). Additionally, deposition testimony from Carly Berna, one of Plaintiff's then-coworkers, suggests that the job description changed after Plaintiff went on leave because her remaining coworkers "realized the [technical] gap only because we were the ones doing the work." (Doc. 55-1 at 108). Defendant presents no financial evidence or internal communications, besides those related to Plaintiff's leave of absence and revised job description, indicating that it had taken a companywide initiative to reduce the amount of money it spent on outside technical vendors. Drawing all reasonable inferences in favor of Plaintiff, it could certainly be inferred from various email exhibits and deposition testimony that Defendant's claimed "financial need" was mere pretext for the revised job description, and that Defendant was in fact motivated by the inconvenience that Plaintiff's medical leave placed on other employees. (*See* Doc. 55-1 at 109, 119, 125). *Cf. Cooper v. T-Mobile USA, Inc.*, 302 F. App'x 581, 583 (9th Cir. 2008) (finding that no reasonable fact-finder could determine that the plaintiff taking FMLA leave was a negative factor in her termination where the plaintiff had already received complaints and discipline for poor performance).

The Court therefore agrees with Plaintiff that "genuine issues of material fact exist on whether (i) [Defendant] ultimately revised [Plaintiff]'s job description and designated her as an 'inactive' employee because she took FMLA leave; and (ii) [Defendant]'s proffered business reasons for the change are mere pretext." (Doc. 49 at 16). Because there are numerous disputed issues of material fact outstanding in this case, the Court must deny the Defendant's Motion for Summary Judgment as to Plaintiff's claim for FMLA retaliation.

### B. Plaintiff's Claim for FMLA Interference

Plaintiff's second cause of action is an interference claim under 29 U.S.C. § 2615(a)(1), as she alleges that Defendant intentionally interfered with her FMLA leave in two ways: (1) by "requiring her to work while on FMLA leave," and (2) by "eliminating

her position once she exercised her rights under the FMLA." (Doc. 1-3 ¶ 50). Defendant argues that summary judgment on the interference claim is appropriate for two reasons: (1) it is "factually unsupported" that Defendant required Plaintiff to work while on leave, as Plaintiff "only performed voluntary and 'de minimis' tasks," and (2) her claim that Defendant eliminated her position is unfounded for the same reasons they argued against her retaliation claim. (Doc. 44 at 11–12).

*1.     Legal Standard*

Under 29 U.S.C. § 2615(a)(1), an employer may not "interfere with, restrain, or deny the exercise" of an employee's FMLA rights. "For an interference claim to survive summary judgment, an employee must show a triable issue of fact exists as to whether her employer impermissibly considered her FMLA leave in an adverse employment action against her." *Newell v. Arizona Bd. of Regents*, 2020 WL 1694735, at *4 (D. Ariz. Apr. 7, 2020). The Ninth Circuit does not apply the *McDonnell Douglas* burden-shifting framework to interference claims under the FMLA. *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011). Thus, to survive summary judgment, Plaintiff need only make a *prima facie* showing that: (1) she took FMLA-protected leave; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to her FMLA leave. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 146–47 (3rd Cir. 2004) (applying the *Bachelder* approach). "An employee can prove an interference claim 'by using either direct or circumstantial evidence, or both.'" *Martin v. Arise Inc.*, 2023 WL 4237332, at *6 (D. Ariz. June 28, 2023) (citation omitted).

The Ninth Circuit's understanding of adverse employment actions is "'expansive,' including any action 'reasonably likely to deter employees from engaging in protected activity.'" *Newell*, 2020 WL 1694735, at *4 (citing *Ray v. Henderson*, 217 F.3d 1234, 1241, 1243 (9th Cir. 2000)). This includes "lateral transfers, unfavorable job references, changes in work schedules," and other deterrents. *Bushfield v. Donahoe*, 912 F. Supp. 2d 944, 955 (D. Idaho 2012).

///

### *2. Analysis*

The first basis for Plaintiff's interference claim is her argument that Defendant initiated contact with Plaintiff during her FMLA leave and required her to perform more than *de minimis* work. (Doc. 49 at 5). *See, e.g.*, *Graves v. DJO, LLC*, 2023 WL 3565077, at *13 (S.D. Cal. Mar. 30, 2023) ("Whether an employer has unlawfully interfered with an employee's FMLA leave depends on the extent of the employer's contacts with the employee.").

The nature and extent of Defendant's contacts with Plaintiff during her FMLA leave are highly disputed—for example, Defendant claims that "the vast majority of the 'work' [Plaintiff] performed was done before Plaintiff requested leave on October 29, 2020," (Doc. 44 at 11), and that Plaintiff only performed *de minimis* tasks "such as sending information or documents that [Defendant] reasonably needed in order to continue a broadcast/taping project that was already in the works when [Plaintiff] experienced her stroke" (*Id.* at 12). Plaintiff, on the other hand, asserts that Defendant's "employees and vendors extensively contacted [Plaintiff]—at all hours of the day—for urgent, work-related matters during her protective leave" (Doc. 49 at 7); that several of Plaintiff's calls with her coworker Ms. Carroll-Nesper "lasted hours," (*Id.*); that she coordinated vendors for an upcoming taping; and that she continued to receive calls, messages, and inquiries through late December 2020 (*Id.* at 9).

There is no bright-line test for determining what amount of work is considered *de minimis*. Being sent several emails asking when a plaintiff will return to work has been found *de minimis*, *Clark v. AmTrust North America*, 2018 WL 839148, at *17 (N.D. Cal. Feb. 13, 2018), *aff'd*, 792 F. App'x 456 (9th Cir. 2019), whereas working between 35 and 40 hours while on FMLA leave has been found to exceed the *de minimis* standard, *Graves*, 2023 WL 3565077, at *14. At this stage, Plaintiff has supplied sufficient documentary evidence, such as emails and text messages with coworkers and vendors during her period of FMLA leave (Doc. 55-1 at 118–20, 123, 125, 128, 130, 132), to establish a genuine dispute of material fact as to whether she performed more than *de minimis* work tasks and

whether she was performing any of the essential functions of her job during her leave. *Cf. Neumeyer v. Wawanesa Gen. Ins. Co.*, 2015 WL 1924981, at *19 (S.D. Cal. Apr. 24, 2015).

The second basis for Plaintiff's interference claim is that Defendant failed to reinstate her to her original position upon her return from protected leave, and that it used her FMLA leave as a factor in a negative employment decision by placing her on inactive status and ultimately terminating her. (Doc. 49 at 13). Defendant argues that the claim that Defendant "eliminated [Plaintiff]'s position" is unfounded for the same reasons they allege that her retaliation claim is unfounded, and they provide no additional arguments to refute the interference claim specifically. (Doc. 44 at 11). Given that this Court has already determined that a genuine issue of material fact exists as to whether Plaintiff was placed on inactive status because of her FMLA leave, the Court will not grant summary judgment to Defendant on this basis, and it need not address Plaintiff's argument that an equitable estoppel doctrine should be applied (Doc. 49 at 14). The Court agrees that, on the basis of the evidence presented, a reasonable jury "could find that [Defendant]'s frustration culminated in revising the Supervising Producer's job description and designating [Plaintiff] as 'inactive' so it could let her go." (*Id.* at 17).

### IV. CONCLUSION

In sum, when drawing all reasonable inferences in a light most favorable to the nonmoving party (here, Plaintiff), Defendant has failed to meet its burden of establishing the absence of a genuine issue of material fact as to Plaintiff's claims for both retaliation and interference under the FMLA. *See Leisek*, 278 F.3d at 898. As such, Defendant is not entitled to summary judgment on either claim. Accordingly,

**IT IS ORDERED** that Defendant Jewish Voice Ministries International's Motion for Summary Judgment (Doc. 44) is **denied**.

Dated this 4th day of October, 2024.

Honorable Steven P. Logan
United States District Judge